**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| In Re: | : | Chapter 11 |
| | : | |
| Harborside Associates, LLC | : | Case No. 17-50749 |
|     Debtor | : | |
| | : | |
| The Bal Harbour Companies LLC | : | |
|     Movant | : | |
| | : | |
| v. | : | |
| | : | |
| Harborside Associates, LLC | : | |
|     Respondent | : | July 18, 2017 |

**MOTION FOR RELIEF FROM STAY OR
ALTERNATIVELY TO DISMISS WITH PREJUDICE OR CONVERT**

The Movant/Secured Creditor, The Bal Harbour Companies LLC ("Bal Harbour"), assignee of The Salce Companies, LLC ("Salce") respectfully requests that this Court enter an order granting it relief from the automatic stay to allow Salce to exercise it's state court rights and remedies against certain property known as 946 Ferry Boulevard, Stratford, Connecticut, (the "Property")

The Movant moves pursuant to 11 U.S.C. Sec.362(d) (1) for cause; 362(d)(2)(a) and 362 (d)(2)(b) based on the Debtor's lack of interest or equity in the Property and that the Property is not necessary to an effective reorganization.

**A.   Background**

1.    On June 6, 2014 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101, et seq. (The "Bankruptcy Code").

2.    This is the second Chapter 11 case for this company which filed a previous case on April 12, 2011, Case No. 11-50738. In the previous case, this Debtor

confirmed a Plan on or about October 30, 2013. A copy of the Debtor's confirmed Fifth Amended Plan is annexed as **Exhibit A**. The salient and pertinent portions of that Plan are as follows:

    a. Article IV - the Debtor is required to pay all real property taxes in 60 months plus 18% interest; pay the first mortgage in monthly installments of $9,000 plus 4.25% interest with a balloon payment due in the 30th month after the effective date; and pay Salce's allowed claim of $600,000.00 in monthly installments of $2,500.00 plus interest pursuant to the parties' Note with a balloon payment due in the 36th month after the effective date.

    b. Salce's treatment is described in Class 3 which also identifies a note which was drafted and executed in conjunction with the Plan and attached as an exhibit to the confirmed Plan. A copy is annexed as **Exhibit B**.

    c. Article VI - the Debtor assumed it's lease with it's tenant, Riverview Bistro LLC. Salce retained it's mortgage lien securing the $600,000 debt owed to it. The Debtor reserved to itself the existing development approvals granted by the Town of Stratford which permitted a condominium development on the Debtors property.

    3.    The Debtor defaulted on its Plan terms by failing to pay real estate taxes to the Town of Stratford and failing to pay installments due to Salce as of the January, 2015 installment. Salce holds a perfected mortgage in the Debtor's real estate located at: 946 Ferry Boulevard, Stratford, Connecticut, (the "Property") for which the mortgage debt owed on the petition date is approximately $801,534.10, See **Exhibit C**,

plus substantial attorney's fees and costs to be determined but which are certainly in excess of $25,000.00. For reasons unknown, the Debtor choose to pay the most recent assignee of the first mortgage debt which accrues interest at 4.25% instead of the taxes at 18%.

4.      The Property is currently being foreclosed upon by Salce in the Superior Court case captioned <u>The Salce Companies, LLC v. Harborside Associates, LLC, et al.</u>, FBT-CV15-6048801-S ("the Foreclosure"). Salce is the plaintiff in the Foreclosure by virtue of its mortgage on the Property and wishes to pursue its remedies against its collateral. Salce assigned all of it's rights and instruments to Bal Harbour LLC as per the assignment annexed as **Exhibit D**.

5.      Bal Harbour has calculated the debt owed in the Property as follows:

a. The real estate tax due as of the end of June was: 2013 grand list, interest & prin. $48,133.03 + 2014 grand list, interest & prin. $86,764.98 + 2015 grand list, interest & prin. $78,961.00 = $213,859.01.

b. $34,774.00, at minimum, is owed immediately for the July 2017 installment owe to the Town. If not paid the total above must be increase by that amount.

c. The principal amount of tax for these list years is $168,689.38. Interest would therefore accrue at the rate of $2,530.34 per month.

d. The sewer use charges are: 2013 grand list, interest & prin. $9,410.23 + 2014 grand list, interest & prin. $11,993,58 + 2015 grand list, interest & prin. $18,764.57 = $40,168.38. This also accrues monthly interest.

6.      The first mortgagee is owed approx. $1,844,000.00. This figure is a rough


estimate only as Bal Harbour has no information on the exact total of payments made to this creditor and bases this only on the Plan obligation of $1,880,505.00 and assumed payments made by the tenant.

7. The value of the Property is not certain at this point in time but has been appraised previously for $2,775,000.00. See **Exhibit E**.

8. At this value the Bal Harbour second mortgage is nearly fully secured.

B. **Stay relief is warranted pursuant to Sec. 362 (d)(1) for Cause.**

9. It is inarguable that this Debtor has now filed it's second Chapter 11 case in the space of 4 years and defaulted on the most important and basic terms of it's confirmed Plan in approx. 1-2 years post-confirmation. The additional accumulation a large amounts of post-confirmation debt demonstrates the Debtor's complete lack of good faith and the utter futility of the instant case. This is especially the case since the Debtor still only owns the same Property with the same tenant paying the same rent.

10. Case law on so-called Chapter 22 cases reveals that such attempts to reorganize yet again after a failed effort to reorganize are presumptively doomed to fail. The case of In re McMahon, 481 B.R. 901, which relies on a 5th Circuit decision in In re Elmwood, 964 F. 2d 508 (1992).

"Applying *Johnson*, the Fifth Circuit in Elmwood extended this rationale to the serial filing of Chapter 11 petitions (a so-called Chapter 22 petition). *In re Elmwood*, 964 F.2d at 510.... Yet, after substantially consummating the Chapter 11 plan, the debtor filed a second Chapter 11 petition. Id. ... using the Johnson rationale, the Fifth Circuit concluded that a Chapter 22 petition is not per se invalid, as Congress had not specifically enumerated such a prohibition in the Code. Id. at 511. ...
Yet, as the Fifth Circuit noted in *Elmwood*, inherent in any bankruptcy case is a fundamental prerequisite: a debtor must file his petition in good faith. 964 F.2d at 510. This constraint protects both the integrity of the bankruptcy system and the rights of creditors. Id. A court may consider the potential for abuse in every case, whether on

motion of an interested party, or sua sponte. See 11 U.S.C. § 105(a); *Elliott v. Sutton*, No. 12-514, 2012 WL 1999846, at *4, 2012 U.S. Dist. LEXIS 77333, at *10 (W.D.La. June 4, 2012). Upon consideration, the court may then issue any order that is necessary or appropriate to prevent an abuse of the bankruptcy process. 11 U.S.C. § 105(a); *Elliott*, 2012 WL 1999846, at *4, 2012 U.S. Dist. LEXIS 77333, at *10.

By requiring good faith, the Code also prevents abusive serial filings. Both *Johnson* and *Elmwood* addressed this issue, and as these courts concluded, the good faith requirement applies to both Chapter 20 and Chapter 22 contexts. See *Johnson*, 501 U.S. at 87, 111 S.Ct. 2150; *In re Elmwood*, 964 F.2d at 510. In Chapter 13 cases, for example, a bankruptcy court may confirm a Chapter 13 plan "only if the court finds, inter alia, that ' the plan has been proposed in good faith.' " *Johnson*, 501 U.S. at 87, 111 S.Ct. 2150; see also § 1325(a)(3). Similarly, under § 1129(a)(3), Chapter 11 plans must be proposed in good faith; " lack of good faith," on the other hand, "constitutes cause for dismissal." *In re Elmwood*, 964 F.2d at 510. The good faith requirement is therefore meant " to be adequate protection from abusive serial filings." *Id.* at 511....

There is no precise test for determining good faith; in making this determination, courts may consider any factors that evidence "intent to abuse the judicial process" or factors that show "a petition was filed to delay or frustrate legitimate efforts of a secured creditor to enforce his rights." *MacElvain v. I.R.S.*, 180 B.R. 670, 673 (M.D.Ala.1995). A court must conduct an " on-the-spot evaluation" of " a collation of factors." Id. The analysis is therefore case-by-case specific, and does not depend on a particular universal test. Id.

In *Johnson*, the Supreme Court remanded without articulating any specific factors that might be included in a good faith analysis. *Johnson*, 501 U.S. at 88, 111 S.Ct. 2150. The Fifth Circuit, however, has described some factors. They include whether: (1) the debtor has one asset, which is a tract of real property; (2) the debtor has few unsecured creditors whose claims are small in relation to the claims of the secured creditors; (3) the debtor has few employees; (4) the property is the subject of a foreclosure action as a result of arrearages on the debt; (5) the debtor's financial problems involve essentially a dispute between the debtor and a secured creditor which can be resolved in a pending state court action; and (6) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights. See *Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (In re Little Creek Dev. Co.)*, 779 F.2d 1068, 1072-73 (5th Cir.1986)[10]; see also *In re Scotia Pacific Co., LLC*, 508 F.3d 214, 223 (5th Cir.2007) (applying the Little Creek factors post-BAPCPA).

Each of these circumstances, if present, weighs against a finding of good faith; moreover, there is no requirement that all factors be present, and the Court may place more weight on one factor than another. See *In re Elmwood*, 964 F.2d at 510 (" A collation of factors, rather than any single datum, controls resolution of the issue. In determining whether a petition was filed with the requisite good faith, the court must examine the facts and circumstances germane to each case.") (citing *In re Little Creek*, 779 F.2d at 1072 & 1074); see also *In re Sherwood Enterprises, Inc.*, 112 B.R. 165, 168 (Bankr.S.D.Tex.1989) ("The Court in *Little Creek Development* set forth a number

of factors which in various combinations are likely to be found in a case lacking the element of good faith in filing."). Applying these factors to the Pending Chapter 13 Case, the Court concludes that the Debtor did not file his Pending Chapter 13 Case in good faith." In re McMahan, 481 B.R. 901, 914 ( Bankr., S.D. Texas, 2012).

A similar analysis and result pertained in Matter of Bouy, Hall & Howard and Associates, 208 B.R. 737, 743 ( Bankr. S.D. Ga.1995).

"A debtor should not be permitted to routinely file a successive Chapter 11 reorganization where it has defaulted on a confirmed, substantially consummated plan of reorganization, because such an effort would, in effect, constitute an impermissible attempt to modify a substantially consummated plan.  However, when the facts if the second case are significantly distinguishable from the first so as not to offend traditional notions of res judicata, a permissible exception exists.  Although the standard for permitting the second Chapter 11 is "good faith", since good faith is a requirement of every Chapter 11 case under 11 U.S.C. Section 1129(a)(3), merely to utilize the ordinary "good faith" test to assess a serial-filed case is insufficient.  To require no greater scrutiny of the subsequent case is to completely ignore Sections 1127 and 1141.  Rather it is necessary for the debtor to demonstrate, after consideration of the first filing and the circumstances surrounding default, that the second petition is not an attempt to thwart the initial bankruptcy proceedings. *In re Elmwood Development Company*, 964 F.2d 508, 511.  The standard is an objective one. Debtor bears the burden to impress upon this Court that reorganization is appropriate considering the facts and circumstances of this case. Debtor must demonstrate more than a lack of malicious intention; instead, Debtor's affirmative duty is to convince this Court that its situation warrants the further protection of Chapter 11.
    When analyzing a Chapter 11 serial filing, the inquiry of a debtor's good faith necessarily includes consideration of all factors collectively rather than determining if one factor mirrors a recognized exception. See *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1394 (11th Cir.1988) ("there is no particular test for determining whether a debtor has filed a petition in bad faith"); *In re Garsal Realty, Inc.*, 98 B.R. 140, at 151 ("the determination of whether a Chapter 11 filing is made in good faith demands the objective consideration of 'the collective impact of the facts and circumstances, not a single feature in a particular case' to ascertain a valid reorganization purpose consistent with the debtor's economic reality"). [13] Matter of Bouy, Hall & Howard and Associates, 208 B.R. 737, 743 ( Bankr. S.D.Ga.1995).

Yet another case analyzing Chapter 22 cases reached the same result and focused on the fact that a successive Chapter 11 constitutes an impermissible effort to evade the statutory prohibition on modifying a substantially consummated Plan.

"A reading of the interplay between § § 1112(b)(1), 1127(a), and 1141(a) indicates the mischief that may be wrought by serial chapter 11 filings in which the previous chapter 11 plan had been substantially consummated; this mischief can potentially emasculate the dictates of the statutory framework. Under § 1127, non-individual debtors in a chapter 11 case may modify a plan until the time in which such plan has been substantially consummated. This opportunity is thereafter foreclosed. Under § 1141, the terms of the confirmed plan become binding. Section 1112 contemplates the possibility of conversion to a chapter 7 case. The combined reading of these sections in pari materia implies that plans may be relied upon by interested parties as a new contract displacing old debts, especially where substantial consummation portends a finality in which the debtor may no longer modify a plan. Where the debtor defaults, § 1112 provisions for conversion to chapter 7 or dismissal, absent " unusual circumstances." While the Code does not contain an explicit prohibition against a debtor filing successive or simultaneous chapter 11 cases in which the first case's plan was substantially consummated, such a circumvention of the statute's rules is certainly a consideration as to whether the second chapter 11 case was filed in good faith. Matter of Buoy, Hall & Howard and Associates is instructive...." The JCP Court also relied on *In Matter of Elmwood*, supra, in it's analysis to determine whether " ... the filing of the second petition was an attempt to evade the Code's prohibition against modifying a substantially confirmed plan. *Id.* at 511. The court found that the debtor bargained for three years in the first bankruptcy case and thereafter sought to avoid its obligation by filing a second case. *Id.* The court indicated that " changed circumstances" that are " unforeseeable" may justify the filing of a second case under a good faith analysis. *Id.* at 512-13. There., the debtor failed to show that its circumstances were unforeseeable." *In re JCP Props., Ltd.*, 540 B.R. 596, 610 (Bankr S.D. Tex. 2015)

11. In the case at bar the Debtor faces a nearly insurmountable burden. This is a single asset real estate case with the only source of income being the same rents from the same tenant at the same Property. Obviously that income was inadequate to fund the confirmed Plan. No logical or reasonable argument can be made to justify this second case under these circumstances. A copy of the relevant page from the lease proves that the rent of $18,000 per month is in effect until June 30, 2022. See **Exhibit F**.

12. Furthermore, this Debtor is attempting to circumvent the statutory prohibition on the modification of a substantially consummated Plan. Annexed as

**Exhibit G** is the final Report and supporting affidavit filed in the first case to seek the entry of a final decree. The Debtor asserted and the Court agreed that its Plan had been substantially consummated. This cannot be controverted. Therefore the current case constitutes a blatant attempt to modify the prior Plan in violation of Code Sec. 1127 (a).

13. The foregoing constitutes a sufficient and proper basis to grant Bal Harbour stay relief for cause.

14. Also, given that the subject Property has no equity for the Debtor as it has no ownership interest, the only issue under Sec. 362(d)(2) is whether the property is necessary to an effective reorganization. "Once the debtor's lack of equity in the collateral has been demonstrated, the burden shifts to the debtor to prove that the property is 'necessary to an effective reorganization.' " In re Washington Associates, 147 B.R. 827, 830 (E.D.N.Y. 1992), citing 11 U.S.C. § 362(d). In this case, the Property is not an asset of the estate, it cannot be part of any reorganization and relief should be granted. All liens on the Property both senior and junior to the movant's are considered in the determination of a debtor's equity in Property. In re Indian Palms Assoc. Ltd., 61 F3d. 197 ( 3rdCir. 1995).

The Debtor's failure to perform under it's previous plan demonstrates that the Property is not necessary to an effective reorganization nor that one is in process. This is a failed venture which does not deserve a second bite at the apple.

15. Alternatively Bal Harbour moves for dismiss with a 12 month bar or conversion of the case to Chapter 7. Bal Harbour submits that conversion is the best option given the fact the Property is valuable and may produce funds to pay all creditors

in full once liquidated. Given the Debtor's lengthy and blatant effort to obfuscate the facts and delay the foreclosure in state court with appeals of adverse decision likely, an auction of the Property is the best alternative to bring this ongoing saga to a fair conclusion.

16. Bal Harbour seeks a waiver of the 14 day stay given the foregoing facts, the lengthy delay and the bad faith demonstrated by this filing in the event the Court does not convert and instead grants stay relief.

WHEREFORE, the Bal Harbour respectfully requests that this Court grant it relief from the automatic stay to pursue all rights and remedies in state court and grant the Bal Harbour such other relief as may be equitable.

Dated: July 19, 2017

> Movant,
> Bal Harbour, LLC
>
> BY: _____
> James M. Nugent   ct# 08822
> James R. Winkel   ct #18304
> Harlow, Adams & Friedman, P.C.
> One New Haven Avenue, Suite 100
> Milford, CT 06460
> Tele No. (203)878-0661

G:\USERS\TaraA\- nugent\Salce Companies, LLC\Harborside Bankruptcy (Second)\Motion for Relief from Stay\Motion for Relief from Stay.wpd