UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
HARTFORD DIVISION

| | x | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| HARBORSIDE ASSOCIATES, LLC, | : | Case No. 17-50749(JAM) |
| | : | |
| Debtor | : | |
| | : | |
| | x | |

## MOTION OF BAL HARBOUR, LLC FOR DERIVATIVE STANDING TO FILE AND PURSUE EQUITABLE SUBORDINATION AND PREFERENCE AVOIDANCE ACTION

Bal Harbour, LLC ("Bal Harbour"), hereby moves for an order granting it derivative standing to file and pursue an equitable subordination and preferential transfer avoidance action, and respectfully represents in support thereof as follows:

### FACTUAL BACKGROUND

1. On June 28, 2017 (the "Petition Date"), Harborside Associates, LLC ("Debtor" or "Harborside"), filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), and since that time has remained a debtor in possession.

2. The Debtor is a Connecticut limited liability company with its principal place of business in Connecticut. It owns property at 946 Ferry Blvd., Stratford, CT ( the "Property").

3. Previously, the Debtor filed a prior Chapter 11 case, Case No. 11-50738, in the District of Connecticut with the same equity owners as its current equity owners (the "Prior Case"). A Plan was confirmed in the Prior case in October, 2013 (the "Confirmed Plan").

4.  Bal Harbour is the holder of a second mortgage against the Property, on account of which it is owed the sum of approximately $$849,612.97 from the Debtor. Bal Harbour took an assignment of this claim from The Salce Companies, LLC ("Salce").

5.  The Debtor's Amended Disclosure Statement in the Prior Case reveals the following relevant information:

  a)  at pg. 3 - the ownership structure of the Debtor.

  b)  at pg. 6 - that Webster Bank originally held the first mortgage against the Property and received monthly adequate protection of $7,500.00 with $172,500.00 paid as of May, 2013.

  c)  at pg. 7, that the Assignor of the first mortgage loan filed a claim for $1,880,505.30 with interest accruing at 4.125% and that $172,500.00 in adequate protection payments were made through May, 2012 (payments continued through confirmation on October 30, 2013; increased to $9,000.00 per month and then later increased to $18,000.00 per month).

6.  In the Prior Case, the Confirmed Plan treated and provided for payment of the first mortgage claim held by Dakota HRG, LLC as follows (in pertinent part):

  a) "Class 2 Secured Claim of Dakota shall be paid $9,000.00 monthly commencing on . . . the Effective Date…with interest …at the note rate of 4.125%", with a balloon payment of the balance due in 30 months ( p. 3)

  b) "The Reorganized Debtor's equity holders will contribute the sum equivalent to any short fall when and as required for performance of the Reorganized Debtor's obligations hereunder" ( p.8).

  c) The Confirmed Plan does not provide for other provisions, terms,

requirements or specifications for the treatment of the first mortgage claim and in particular, the Confirmed Plan does not provide for the imposition of a default interest rate under any circumstances, nor does it incorporate the terms of any mortgage, note or other loan documents that may have been the basis for the first mortgage claim.

7. The Confirmed Plan in the Prior Case treated the second mortgage claim of Salce, Bal Harbour's assignor, in pertinent part as follows: Salce's claim in the amount of $600,000 was to be paid with interest at 6% per annum in monthly installments of $2,500 per month, with the outstanding balance of the claim to be paid in full on or before 36 months from the Effective Date of the Confirmed Plan. A "Modified Note" was to be provided setting forth these terms, as well as events of default entitling Salce to accelerate the amount due, such as the failure of the Debtor to pay real estate taxes.

### A.   Sioux, LLC is Formed and Acquires the Dakota First Mortgage Loan

8. After the Debtor filed the current Chapter 11 case (thus a Chapter 22), its Schedules listed a secured claim owed to Sioux, LLC ("Sioux") in the amount of $2,100,000.00 Sioux filed a claim first for $1,827,716.35 and then amended it to $1,887,235.53. Apparently, Sioux is the assignee of Dakota HRG.

9. During Rule 2004 discovery, it was later learned for the first time that Sioux is owned by three Trusts: the Dakota Trust (Settlor-Luciano Coletta); the Lakota Trust (Settlor – Lorenzo Coletta; and the Nakota Trust (Settlor - Gabrielle Villano - now deceased).

10. The Colettas and the Estate of Gabrielle Villano are also the indirect owners of two-thirds of the Debtor through their limited liability company, Hermanos, LLC, of which Luciano Coletta is the manager, and the Gabrielle Villano Revocable Trust, of which Kathleen Villano is the Trustee. Thus, the indirect equity owners of a two-thirds interest in the Debtor (the

Colettas and the Estate of Gabrielle Villano) are the indirect owners of Sioux through three trusts.

11. Sioux apparently obtained an assignment of Dakota's interest in or about December, 2015.

12. In January, 2016, after Sioux acquired the position of the holder of the first mortgage claim, Dakota HRG, the Debtor's semi-annual real estate tax payment to the Town of Stratford was due in the amount of $33,178.64.

13. Sioux alleges in its amended proof of claim filed on September 19, 2017 that the first mortgage note went into default as of February 1, 2015 because the Debtor failed to pay the January, 2015 tax installment and therefore Sioux elected to accelerate the full amount of the note as immediately due and payable without notice to the Debtor. According to Sioux, "[t]he default as of February 1, 2016 triggered the default rate of interest" (*See* Amended POC, Ex. C, in pertinent part].

14. Sioux's proofs of claim ("POCs") further allege that based on the default, and under the ostensible authority of an assignment of rents, it then made a demand for the rents on the Debtor's tenant at the Property, Riverview Bistro, LLC ("Riverview"), and began direct collection of all rents payable by Riverview to the Debtor.

15. Riverview pays $18,000.00 per month in rent and has paid it continuously to either the Debtor or Sioux.

16. Sioux then collected the rental payments which were being made on a bi-weekly schedule (for reasons unknown) in installments of $8,307.69. Thus the total of these monthly payments is $16,615.38 which is $1,384.62 less than the total rental payments.

17. Sioux applied these rental payments to its debt, attorney's fees

apparently owed by Harborside and to expenses incurred by Harborside.

18.  Sioux's POC and amended POC both list the value of the Property as $2,525,000.00. However, even though the Debtor was fully current and not in default on its obligations to the holder of the first mortgage claim under the Confirmed Plan, Sioux, without legal basis[1], demanded all monthly rent payments from Riverview but then only paid one real estate tax installment [which one?]. As a result, the Town has filed a claim for $273,629.87 which includes statutory interest at 18%.

### B.  The Calculation of the Claim on the First Mortgage Debt

19.  According to the Debtor's Prior Case and more particularly, the Confirmed Plan and Disclosure Statement in the Prior Case, the first mortgage debt was treated in the following amounts:

a)  $1,880,505.30 (amount treated in Confirmed Plan);

b)  $172,500.00 (paid by Debtor as of May, 2012);

c)  $45,000.00 (paid by Debtor as of October, 2013);

d)  $217,500.00 was therefore paid on that debt as of the confirmation date of October 30, 2013; and

e)  $9,000.00 per month was thereafter paid on that debt starting in November, 2013 as per the Confirmed Plan.

20.  The first POC filed by Sioux states that at the point in time that Sioux

---

[1] The Confirmed Plan does not provide for a default and right of acceleration in favor of the holder of the first mortgage claim if the Debtor fails to pay real estate taxes. The absence of a provision for such a default and right of acceleration is significant when contrasted with the Confirmed Plan's treatment of the second mortgage claim of Salce, which expressly provides for a default and right of acceleration if the Debtor fails to pay real estate taxes.

5

began twice-monthly payments of $8,307.69, ". . . $9,000 per month is applied to the Note . . . (see Ex. F) and the remainder is due Harborside Associates, LLC." [See Claim #2, 8/31/17, pg. 6 of 6].

21. Sioux's amended POC does not provide any reference to paying money back to Harborside.

22. A "Loan Summary" prepared by Sioux's accountant and attached to the amended POC as Ex. C, pg. 12 of 13, does purport to show how the monthly application of $15,344.51 of loan payments would reduce the first mortgage debt.

23. The amended POC also contains a ledger sheet prepared by Sioux's accountant which purports to explain how the "[e]xcess rent collected from HA (Harborside)" was applied (pg 13 of 15). The calculation produces the final figure of $15,344.51 per month in payments after deducting payments for Harborside's legal fees, appraisals and permits. Thus, it appears Sioux collected a total amount of $558,557.61 for its own account, representing 32 months in rent payments from Riverview net of payments made by Sioux for obligations owed by the Debtor.

## RELIEF REQUESTED

24. Bal Harbour requests leave of Court to file and pursue an adversary proceeding seeking equitable subordination of the first mortgage claim held by Sioux and for recovery of preferential transfers received by Sioux, as an insider, within the one year prior to the Petition Date. A copy of the Complaint Bal Harbour proposes to file, if permitted to do so, is attached hereto as Exhibit "A."[2]

---

[2] Bal Harbour submits that as a secured creditor that has been particularly harmed by Sioux's misconduct, it has independent standing to assert a claim of equitable subordination. *See Algonquin Power Income Fund v. Ridgewood Heights, Inc. (In re Franklin Industrial Complex, Inc.)*, 2007 WL 2509709, at *9-11 (Bankr. N.D.N.Y. Aug. 30, 2007). *See also See Miller v. Elway Company, LLP (In re Elrod Holdings Corp.)*, 392 B.R. 110, 115-16 (Bankr. D.

## BASIS FOR RELIEF REQUESTED

25. A bankruptcy court may grant derivative standing to commence estate litigation, such as an avoidance action, to a party in interest other than the debtor in possession if it is established that the debtor in possession "unjustifiably failed to bring suit or abused its discretion in not suing to avoid a preferential transfer." *Unsecured Creditors Committee of Debtor STN Enterprises, Inc. v. Noyes (In re STN Enterprises, Inc.)*, 779 F.2d 901, 904 (2d Cir. 1985). The rule in *STN* has been applied to authorize individual creditors to bring avoidance actions that otherwise could have been brought by the trustee or debtor in possession. *See e.g. Canadian Pacific Forest Products Limited v. J.D. Irving, Ltd. (In re Gibson Group, Inc.)*, 66 F.3d 1436, 1438-39 (6th Cir. 1995).

26. As aptly stated by the Bankruptcy Court in *Official Committee of Unsecured Creditors v. Pardee (In re Stanwich Financial Services Corp.)*, 288 B.R. 24, 27 (Bankr. D. Conn. 2002):

> The core objectives of bankruptcy cannot be achieved if those who would otherwise be exposed to transfer avoidance actions, *e.g.* §§ 544, 547, 548 and 549, are insulated by the reluctance or inability of a debtor-in-possession to commence and prosecute such actions. The derivative standing of an Official Committee of Unsecured Creditors fills that void where, as here, there is a reasonable basis for the action.

This rationale has no less application to a single creditor of the estate, particularly where, as in this case, there is no creditors' committee.

27. Bal Harbor has made demand upon counsel for the Debtor to bring an equitable subordination claim against Sioux based on its wrongful and unlawful conduct as set forth above,

---

Del. 2008). This motion has therefore been brought as a precaution in the event the Court believes that a grant of derivative standing is nonetheless required.

as well as an action to avoid preferential transfers Sioux received based on its improper exercise of an assignment of rents, but that demand has been refused.

28. There is a reasonable basis for seeking to equitably subordinate Sioux's first mortgage claim based on its insider relationship with the Debtor and their obvious collusion in manufacturing an alleged "default" and acceleration of Sioux's first mortgage claim, when there was no legal or contractual basis for such a default and acceleration.

29. Additionally, there is significant merit to accompanying the claim of equitable subordination with an action for the avoidance and recovery or preferential transfers Sioux received as a result of its improper exercise of an assignment of rents because once its claim is subordinated, the requirement that Sioux received more than it would have received if the Debtor were liquidated under Chapter 7, 11 U.S.C. §547(b)(5), will have been satisfied.

**WHEREFORE,** Bal Harbor respectfully requests an order granting it leave of Court to file and prosecute an adversary proceeding against Sioux for equitable subordination and avoidance and recovery of preferential transfers, in addition to such other or further relief as the Court may deem just, equitable and proper.

Dated: Milford, Connecticut
November 17, 2017

MOVANT,
BAL HARBOUR, LLC

By: /s/James M. Nugent
James M. Nugent (ct08822)
Harlow, Adams, and Friedman
One New Haven Ave, Suite 100
Milford, CT 06460
(203) 878-0661
jmn@quidproquo.com

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF CONNECTICUT
# HARTFORD DIVISION

| | | |
|---|---|---|
| In re: | x : | Chapter 11 |
| HARBORSIDE ASSOCIATES, LLC, | : : | Case No. 17-50749(JAM) |
| Debtor | : : : | |
| | x | |

## ORDER GRANTING DERIVATIVE
## STANDING TO BAL HARBOUR, LLC

Bal Harbour, LLC ("Bal Harbour"), having filed a Motion for Derivative Standing to File and Pursue Equitable Subordination and Preference Action (the "Motion"), and after due notice and a hearing on the Motion, and considering the arguments of counsel for the respective parties, and good cause appearing therefor, it is hereby

**ORDERED**, that Bal Harbour is granted derivative standing to file and pursue, on behalf of the estate of the Debtor and Debtor-in-Possession, Harborside Associates, LLC (the "Debtor"), an adversary proceeding seeking to avoid and recover preferential transfers from the Debtor to Sioux, LLC; and it is further

**ORDERED**, that based on alleged particularized harm to Bal Harbour as the holder of a second mortgage against the Debtor's real property, Bal Harbour may proceed with a claim of equitable subordination against Sioux without leave of Court to do so.

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| In Re: | : | Chapter 11 |
| | : | |
| Harborside Associates, LLC | : | Case No. 17-50749 |
| | : | |
| Debtor | : | November 17, 2017 |

**NOTICE OF CONTESTED MATTER RESPONSE DEADLINE**

Creditor, Bal Harbour, LLC, (the "Creditor/Movant") has filed a Motion for Derivative Standing to File and Pursue Equitable Subordination and Preference Avoidance Action (the "Contested Matter") with the U.S. Bankruptcy Court. Notice is hereby given that any response to the Contested Matter must be filed with the Court no later than December 1, 2017 *. In the absence of a timely filed response, the proposed order in the Contested Matter may enter without further notice and hearing, see, 11 U.S.C. § 1 02(1).

THE CREDITOR/MOVANT,

BY: _____
James M. Nugent    ct08822
Harlow, Adams & Friedman, P.C.
One New Haven Avenue, Suite 100
Milford, CT 06460
Tele No. (203) 878-0661
Fax No. (203) 878-9568
jmn@quidproquo.com

*Pursuant to Federal Rule of Bankruptcy Procedure 9006(f), if service is made by mail, three days are added after the response date set in this notice.

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| In Re: | : | Chapter 11 |
| | : | |
| Harborside Associates, LLC | : | Case No. 17-50749 |
| | : | |
| Debtor | : | November 17, 2017 |

## CERTIFICATION

      The undersigned (the "Creditor/Movant") hereby certifies that on November 17, 2017, in accordance with applicable provisions of the Federal Rules of Bankruptcy Procedure 2002 and 7004, the following have been served upon all parties entitled to notice: (1) a copy of the Contested Matter; (2) a copy of the proposed Order; and (3) Notice of Contested Matter Response Deadline, on the following:

U. S. Trustee
USTPRegion02.NH.ECF@USDOJ.GOV
*Via Electronic Notice of Filing*

Carl T. Gulliver
on behalf of Creditor Coan, Lewendon,
Gulliver & Miltenberger, LLC
cgulliver@coanlewendon.com
*Via Electronic Notice of Filing*

Douglas S. Skalka
on behalf of Debtor Harborside Associates, LLC
dskalka@npmlaw.com
*Via Electronic Notice of Filing*

James D. Hine, II
on behalf of Creditor Prime Bank
hine@moglaw.com

Jonathan J. Klein
on behalf of Creditor Sioux, LLC
jjkesq@hotmail.com

Sean Robert Plumb
on behalf of Creditor Town of Stratford
srp@jlgct.com

                                  THE CREDITOR/MOVANT,

BY: _____
                                  James M. Nugent        ct08822
                                  Harlow, Adams & Friedman, P.C.
                                  One New Haven Avenue, Suite 100
                                  Milford, CT 06460
                                  Tele No. (203) 878-0661
                                  Fax No. (203) 878-9568
                                  jmn@quidproquo.com